UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SYDNEY F. JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CV-0377-CVE-PJC |
| ) | |
| HARTFORD LIFE & ACCIDENT ) | |
| INSURANCE COMPANY, a Delaware ) | |
| corporation and ) | |
| PRICEWATERHOUSECOOPERS, LLC, ) | |
| a Delaware Corporation, Plan Administrator, ) | |
| Disability Plan, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff filed this action seeking to recover benefits and enforce his rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Plaintiff challenges as arbitrary and capricious defendant Hartford Life & Accident Insurance Company's ("Hartford") decision to deny long-term disability ("LTD") benefits and discontinue short term-disability ("STD") benefits after April 30, 2002.

**I.**

Sydney Jordan graduated first in his law school class at the University of Tulsa and was employed as a corporate attorney by Phillips Petroleum Company for 18 years. However, he had a stroke in July 1999 and was forced to retire. Jordan improved to the point that he believed he could return to work and he actively sought employment. He experienced difficulty finding another job in the legal profession, and he accepted a position as a financial analyst for Pricewaterhouse

Coopers, LLP ("PwC") in June 2000.[1] Jordan also served as a municipal judge in Skiatook, Oklahoma. Beginning in October 2001, Jordan noticed signs of short-term memory loss and complained that he was unable to concentrate on his work. He took medical disability leave in November 2001. According to the administrative record, Jordan continued to work as a municipal judge while on disability leave.

Jordan visited his primary care physician, Steven Wiseman, M.D., regarding his cognitive difficulties. Dr. Wiseman did not diagnose Jordan with a cognitive disorder, but found that Jordan was "very stressed out" and showed signs of depression and anxiety. Dr. Wiseman referred Jordan to John D. Hastings, M.D., for a neurological evaluation. Dr. Hastings found no evidence of a cognitive impairment or dementia, but suggested that plaintiff's cognitive symptoms could be due to depression. He noted that Jordan's responses to testing indicated "very intact intellectual function," but referred Jordan to Adam Sherman, M.D., for neurophysical testing. Dr. Sherman conducted an extensive examination and provided Jordan with a detailed report of his findings. Although Jordan's IQ was lower than what Dr. Sherman would normally expect for a person with a graduate education, it was still within a normal range for a person of plaintiff's age. Dr. Sherman noted a correlation between Jordan's forced retirement and possible dissatisfaction with his new employment, suggesting that mild depression or difficulties adjusting to his new employment were partly responsible for Jordan's cognitive symptoms. The report shows that plaintiff responded favorably to a range of behavioral, emotional, and motor functions tests. Dr. Sherman recommended

---

[1]    Jordan hoped that he would eventually be moved into PwC's legal department, but this never occurred.

aggressive treatment for Jordan's depression, including medication and psychotherapy, to help him adjust to stressful changes in his life.

Jordan and his wife met with Dr. Hastings to go over the results of Dr. Sherman's examination, and expressed their dissatisfaction with Dr. Sherman's diagnosis. They believed there was a medical explanation for Jordan's problems rather than the emotional causes cited by Dr. Sherman. Dr. Hastings proposed two avenues of treatment. First, Jordan could begin psychotherapy with David McElwain, M.D.[2] Second, Dr. Hastings could order a second round of neurophysical testing regarding Jordan's concern that he was suffering from dementia.

On April 28, 2002, Jordan filed a claim for STD and LTD benefits with Hartford. He did not state a medical diagnosis for his disability, but described cognitive difficulties, such as memory loss and inability to concentrate, as the basis for his claim. Jordan claimed that the first day he was unable to work was November 15, 2001, and that he had not returned to work since that date. Hartford paid STD benefits through April 30, 2002, but denied Jordan's claim for LTD benefits. Hartford found that the medical evidence did not substantiate Jordan's claim that he was suffering from a neurological or psychiatric restriction. Hartford notified Jordan of his right to appeal Hartford's decision. Jordan disputed Hartford's decision, and he hired an attorney to assist with an appeal.

---

[2] Dr. McElwain had treated Jordan for mild depression before his stroke in 1999. Dr. Hastings believed it would be beneficial for Jordan to see a psychotherapist with whom he had a pre-existing patient-physician relationship.

PwC purchased a group LTD insurance plan ("the Plan") from Hartford that provided up to 24 months of benefits for claims arising out of mental illness.[3] The Plan defines mental illness as "any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage." Admin Rec. at 28. Hartford pays LTD benefits if the claimant was prevented from "performing one or more of the Essential Duties of [his] Occupation, and as a result [his] Current Monthly Earnings are no more that 80% of [his] Indexed Pre-disability Earnings." Id. at 17. The "your occupation" standard considered the work performed by the employer in the general workplace, not just the "specific job You are performing for a specific employer or at a specific location." Id. at 21. The Plan placed the burden of proof of loss on the claimant, but the Plan could determine if the proof of loss was satisfactory when making a benefit decision. The Plan retained "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Id. at 36.

After plaintiff initiated the claim process, he continued to seek medical treatment. On April 30 and May 15, 2002, he met with Stephen Harnish, Ph.D. Jordan continued to see Dr. Harnish, and on August 21, 2002, Dr. Harnish opined that Jordan was disabled due to neurological and psychological disorders.[4] On June 25, 2002, Jordan visited Mark A. Sperle, Ph.D., for a psychological examination to assess Jordan's cognitive functioning. Dr. Sperle concluded that,

---

[3] Hartford would pay benefits beyond 24 months if the beneficiary was confined to a hospital or other mental health facility for the same condition for which he was receiving LTD benefits.

[4] Dr. Harnish did not diagnose specific neurological and psychological disorders as the causes of plaintiff's symptoms.

4

based on Jordan's reduced verbal I.Q. and visual perception, Jordan would have difficulty performing his job, and he questioned several of Dr. Sherman's findings. However, he did not make a conclusive diagnosis and referred Jordan back to Dr. Sherman for further treatment. Jordan began psychiatric treatment with Jimmie McAdams, D.O., who concluded that Jordan "was temporar[ily] and totally disabled for his job or any other job that would require memory, focus, concentration, and learning new tasks." Id. at 451. Dr. McAdams believed that Jordan's problems were most likely caused by a combination of organic factors. Jordan also obtained an affidavit from the court clerk for the municipal court stating that Jordan suffered from memory lapses and that he had difficulty expressing himself verbally. These records were all submitted to Hartford by December 5, 2002 for consideration when Jordan filed an appeal.

Hartford received Jordan's appeal on January 6, 2003. In response to plaintiff's appeal, Hartford requested additional medical records related to his 1999 stroke. Jordan produced records from a consultation with Daniel McGaghren, Ph.D., relating to his stroke. On January 8, 2003, Jordan and his attorney met with Dr. Sherman to clarify his findings, and Dr. Sherman stated that:

> While it may be tempting to reason that Mr. Jordan's grossly intact neurocognitive functioning means that he is able to resume his prior occupational functioning, it is important to note that affective elements can frequently exercise marked deleterious effects upon an individual's functional skills, on a behavioral level. In this regard, while neurocognitive testing failed to reveal a coherent pattern of deficits which would presumable [sic] interfere with Mr. Jordan's work functioning, I nevertheless believe that the functional impairments he reports are genuine, and pending resolution of ongoing depression and anxiety, he is very likely temporarily totally disabled in terms of his job.

Id. at 317. Plaintiff later submitted a report from Joe Scruggs, Ph.D., who diagnosed plaintiff with major depression and anxiety based on his scores on MMPI-2. Dr. Scruggs did not state whether he believed Jordan could return to work.

After receiving all of the medical records, Hartford referred Jordan's claim to David A. Kent, Psy.D., for outside review. Dr. Kent found objective evidence supporting a depressive disorder, but found that Jordan was able to perform the essential duties of his job. In reaching his opinion, Dr. Kent talked to Dr. Sherman and Dr. Sperle regarding their treatment of Jordan.[5] He summarized his conversations with Jordan's treating physicians in a letter to each physician. Dr. Kent concluded that Jordan suffered from emotional difficulties, but did not find any evidence to support a diagnosis for dementia. He noted that Jordan continued to serve as a municipal judge and manage a farm. This suggested that Jordan could perform many of the essential functions of his job as a financial analyst. Hartford also referred Jordan's file to Brian Mercer, M.D., for a neurological review of plaintiff's file. Dr. Mercer was asked to consider whether Jordan's current psychological symptoms were related to his stroke. Dr. Mercer concluded that there was no medical evidence suggesting a causal relationship between the stroke and Jordan's depression. On September 30, 2003, Hartford denied Jordan's appeal of its decision to deny LTD benefits and to discontinue STD benefits.

**II.**

As a preliminary matter the Court must establish the proper standard of review for plaintiff's ERISA claim. As a plan beneficiary, plaintiff has the right to federal court review of benefit denials and terminations under ERISA. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Specifically, 29 U.S.C. § 1132(a)(1)(b) grants plaintiff the right "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify

---

[5] Dr. Kent also attempted to contact Dr. McAdams to discuss his treatment of Jordan, but he was unable to do so.

his rights to future benefits under the terms of the plan." The default standard of review is de novo. However, when a plan gives the claims administrator discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a challenge under section 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard. See Firestone, 489 U.S. at 115 (courts must apply the appropriate standard "regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.").

Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, a "reduction in deference is appropriate" where there is an inherent or proven conflict of interest. Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1006 (10th Cir. 2004). If plaintiff shows a conflict of interest, deference to the administrator's decision is reduced and the burden shifts to Hartford to prove "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Id.

In a conflict of interest situation, the determinative inquiry is whether the administrator's decision was supported by substantial evidence. "'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].' Substantial evidence requires 'more than a scintilla but less than a preponderance.'" Sandoval v. Aetna Life & Cas. Inc. Co., 967 F.2d 377, 382 (10th Cir. 1992) (citations omitted). "The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the

terms of the plan to the particular case, untainted by the conflict of interest." Allison v. Unum Life Ins. Co. of America, 381 F.3d 1015, 1022 (10th Cir. 2004). The Court considers the record as a whole, but it considers only that information available to the plan administrator at the time the decision was made. Hall v. Unum Life Ins. Co. of America, 300 F.3d 1197, 1201 (10th Cir. 2002); Chambers v. Family Health Plan Corp., 100 F.3d 818, 823 (10th Cir. 1996) ("The reviewing court may consider only the evidence that the administrators themselves considered."). The Court must "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994) (internal citations and quotation marks omitted). The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence. See Caldwell v. Life Ins. Co. of N. America, 287 F.3d 1276, 1282 (10th Cir. 2002). Yet, the Court "will not set aside a benefit decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co., Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

The proper standard of review in this case is the "arbitrary and capricious" standard discussed by the Tenth Circuit in Fought. The parties are in agreement that Hartford had discretionary authority under the Plan to make all benefits and coverage determinations and neither party has suggested that de novo review would be proper in this case. Based on the record, it is clear that Hartford was operating under an inherent conflict of interest, given its dual role as fiduciary and insurer under the Plan. Therefore, the Court will apply an "arbitrary and capricious" standard of review, but defendant must demonstrate the reasonableness of its decision to deny coverage by

showing that the conflict of interest did not influence its decision and that the coverage determination was supported by substantial evidence.

Plaintiff argues that the Court must apply a less deferential standard of review because of procedural irregularities committed by Hartford when it reviewed plaintiff's claim. Hartford referred specific questions to Dr. Kent to guide his independent review, and plaintiff claims that Dr. Kent failed to provide all of the requested information. In particular, plaintiff points out the following omissions in Dr. Kent's review: 1) he failed to consider plaintiff's statement that plaintiff had significant work related stress; 2) Dr. Kent did not comment on the existence of an organic neurological impairment; 3) his report did not mention every test result submitted for his review; and 4) he did not contact plaintiff's treating physician, Dr. McAdams, to discuss plaintiff's condition. Plaintiff claims that Hartford violated 29 U.S.C. § 1133(2) and denied plaintiff a full and fair review of his ERISA claim.

In order to justify a reduction in the level of deference, plaintiff must show the existence of a "serious procedural irregularity." Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 800 (10th Cir. 2004). Although procedural deficiencies should not be overlooked, the Court must consider whether "the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA and its accompanying regulations." Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 634 (10th Cir. 2003). In this case, plaintiff alleges that a physician hired to perform an independent review committed procedural errors. Neither Hartford nor Dr. Kent had a duty to personally speak to Dr. McAdams before concluding that plaintiff's appeal should be denied. Although this could have been helpful, Hartford did not ignore the evidence provided by Dr. McAdams. Hartford reviewed the medical records provided by Dr. McAdams, and Dr. Kent states

9

that he called Dr. McAdams several times but was unable to speak to him. Considering that Dr. Kent, as an independent reviewer, did not have a duty to personally speak to plaintiff's treating physicians, this does not constitute a serious procedural irregularity. As to plaintiff's claim that Dr. Kent did not refer to specific statements in the administrative record, the plan administrator does not have to refute every allegation or statement that supports plaintiff's claim. The plan administrator must consider the evidence presented by plaintiff and state its reason for granting or denying benefits. Schneider v. Sentry Group Long Term Disability Plan, 422 F.3d 621, 627-28 (7th Cir. 2005). However, plaintiff has not provided any case law that suggests the plan administrator has to discuss each piece of evidence on-the-record before denying a claim for benefits. See Gallo v. Amoco Corp., 102 F.3d 918, 922-23 (7th Cir. 1996) ("The administrator must give the 'specific reasons' for the denial . . . but that is not the same thing as the reasoning behind the reasons, in this case, the interpretive process that generated the reason for the denial."); Davidson v. Prudential Ins. Co. of America, 953 F.2d 1093 (8th Cir. 1992) (plan administrator did not violate section 1133 when it kept claimant informed of the status of his claim and set out its reasons for denying the claim so that claimant could adequately prepare an appeal).

There is no evidence that the Plan administrator violated section 1133(2). The Plan administrator considered all of the evidence presented by plaintiff and notified plaintiff of the specific reasons his claim was denied. See 29 U.S.C. § 1133. Absent any prejudice to plaintiff, minor procedural deficiencies by an independent reviewer do not reduce the level of deference shown to the plan administrator's decision. Sage v. Automation, Inc. Pension Plan & Trust, 845 F.2d 885, 895 (10th Cir. 1988). Plaintiff is not entitled to an additional reduction in deference based on the existence of procedural irregularities.

### III.

Plaintiff's substantive claims fall into two general categories. First, plaintiff alleges that Hartford ignored evidence of an organic neurological condition when it denied plaintiff's claim for LTD benefits. Second, plaintiff argues that Hartford failed to consider plaintiff's psychological limitations. Plaintiff alleges that Dr. Kent and Dr. Mercer did not give sufficient weight to evidence from his treating physicians and ignored parts of the administrative record that supported his claim.

Contrary to plaintiff's assertions, the outside reviewers performed an extensive analysis of plaintiff's medical history and treatment. Although they may not have focused on the parts of plaintiff's medical record he deems most important, there is no evidence that they ignored the evidence Hartford provided them. Both Dr. Kent and Dr. Mercer examined the records from each of plaintiff's treating physicians and they contacted several of plaintiff's physicians by telephone to discuss their opinions of plaintiff's condition. They summarized their discussions with plaintiff's physicians following the conversation, and gave plaintiff's physicians a chance to correct any misunderstandings. This does not show that Dr. Kent or Dr. Mercer willfully ignored pertinent evidence in the administrative record but, instead, shows that they conducted a thorough review of plaintiff's claim. Hartford did not fail to provide plaintiff a full and fair review simply because its independent reviewers did not find evidence sufficient to support plaintiff's claim for disability benefits. Adamson v. Unum Life Ins. Co. of America, 455 F.3d 1209, 1214 n.2 (10th Cir. 2006) ("It simply proves too much to declare that a serious procedural irregularity will be present in every instance where the plan administrator's conclusion is contrary to the result desired by the claimant."). Hartford created a thorough record of its review process, and plaintiff's assertion that Hartford ignored relevant evidence is not supported by the administrative record.

Plaintiff refers to Dr. Sherman's reports to support his claim that there is objective evidence supporting his claim for permanent disability. He claims that Dr. Sherman noted that plaintiff had difficulty swallowing, sensitivity in his left shoulder, a somewhat lurching gait, mild facial weakness, deviation of the tongue, and a bilateral suck reflex. The medical records show that Dr. Sherman did not conclude that plaintiff suffered from a neurological disorder based on this evidence. Plaintiff cites his initial visit to Dr. Sherman to support many of these factual claims, but Dr. Sherman's reports show that many of these problems cleared up over time. For example, when Dr. Sherman diagnosed many of these symptoms on February 8, 2002, he specifically concluded that plaintiff did not have dementia or any other neurological disorder. At a follow-up visit on January 20, 2003, Dr. Sherman stated that "Mr. Jordan has an essentially normal gait" and the examination showed that plaintiff's reflexes and muscle responses were within normal limits. Dr. Mercer discusses Dr. Sherman's findings in detail and correctly states Dr. Sherman's overall finding that plaintiff did not suffer from dementia. Hartford did not ignore Dr. Sherman's opinions, but referred to Dr. Sherman's reports in support of its decision to deny benefits.

Plaintiff refers to the affidavit of Darlene Bricker, court clerk for the municipal court of Skiatook, as evidence of his cognitive difficulties. Bricker reports that Jordan had trouble remembering names and performing simple mathematical calculations. She believed these problems developed after plaintiff's stroke. Plaintiff also relies on Bricker's affidavit as evidence that he could perform his duties as a municipal judge only with accommodations provided by his employer. Dr. Kent considered Bricker's affidavit, but plaintiff alleges that he did not afford the affidavit sufficient weight. Although Bricker states that she noticed behavioral changes in Jordan's behavior, she is not a doctor. Plaintiff's cites Heaser v. Toro Co., 247 F.3d 826 (8th Cir. 2001), to show that

12

a part-time or reduced workload is an accommodation. Id. at 831. While this consideration may be relevant for a claim under the Americans with Disabilities Act, plaintiff fails to demonstrate why evidence of an accommodation is relevant to his ERISA case. Dr. Kent clearly considered Bricker's affidavit, but still concluded that plaintiff could still perform the essential functions of his job.[6]

Dr. McAdams opined that plaintiff was totally disabled due to his reduced cognitive abilities and difficulty concentrating on work for a sustained period of time. Although he did not identify a specific organic disorder, he stated that plaintiff's symptoms were consistent with many neurological conditions. Hartford could not arbitrarily refuse to consider reliable evidence provided by plaintiff's treating physician. Fought, 379 F.3d at 1000 n.1; Doyle v. Barnhart, 331 F.3d 758, 762-63 (10th Cir. 2003). However, Dr. McAdam's opinion was not entitled to special weight, as the Supreme Court has expressly rejected a treating physician rule under ERISA. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). The denial letter specifically references Dr. McAdams findings, but relies on Dr. Kent's review to reject Dr. McAdams opinion that plaintiff was totally disabled. When faced with conflicting medical evidence, as in this case, the plan administrator's decision is not arbitrary and capricious simply because it conflicts with the assessment of plaintiff's treating physicians. See Semien v. Life Ins. Co. of North America, 436 F.3d 805, 812 (7th Cir. 2006) ("Although [plaintiff's] treating physicians reached different conclusions as to her abilities, under an arbitrary and capricious review, neither this Court, nor the

---

[6] Dr. Kent describes Bricker's affidavit as showing evidence of plaintiff's "rather prominent problems with expressive language, remote and recent memory, naming and written language." Admin. Rec. at 5. Contrary to plaintiff's assertions, Dr. Kent considered the affidavit and found that it contained strong evidence of plaintiff's cognitive difficulties. Plaintiff may disagree with Dr. Kent's conclusion, but there is no indication that he ignored relevant evidence that supported plaintiff's claim for STD or LTD benefits.

district court, will attempt to make a determination between competing expert opinions."); Leahy v. Raytheon Co., 315 F.3d 11 (1st Cir. 2002) (existence of conflict between treating physician and independent reviewers insufficient to meet plaintiff's burden under arbitrary and capricious standard of review).

Plaintiff's assertion that Hartford decided to deny his claim for benefits without obtaining a description of his job is unfounded. Plaintiff personally provided a detailed list of his job duties when it seemed clear that PwC would not respond to Hartford's request for plaintiff's job description. Admin Rec. at 517-26. He identified the specific job duties that applied to him, and Hartford included this material in the administrative record. PwC's failure to submit a formal job description can not be attributed to the Plan administrator, as the evidence shows that Hartford obtained a job description during its appellate review of plaintiff's claim. Dr. Kent determined that the duties of a municipal judge and an accountant overlapped in many respects, and that plaintiff could still serve as a part-time judge, even if with some difficulty. He reviewed relevant job descriptions, but found no objective evidence of a neurological impairment that would prevent plaintiff from performing the essential duties of his job.[7] It was not arbitrary and capricious for Dr. Kent to reach this conclusion.

Defendant has produced substantial evidence in support of its conclusion that plaintiff did not suffer from a neurological disorder. Although plaintiff has cited test results from his treating physicians, none of his doctors actually diagnosed plaintiff with a specific disorder. Plaintiff's

---

[7] Plaintiff argues that the job description he provided contains additional duties that he was not required to perform. Even if Hartford erred by considering additional job duties, the error was in plaintiff's favor. If Hartford considered more tasks as essential to plaintiff's job, it would have made it easier for plaintiff to prove that he could not perform one of the essential functions of his job.

doctors state that plaintiff may likely have a neurological disorder based on his symptoms, but conclude that the test results do not clearly establish the existence of a neurological disorder. Under the Plan, plaintiff had the burden to produce proof of loss, and Hartford reasonably concluded that plaintiff did not meet this burden.

Likewise, plaintiff has not proven that Hartford's failure to pay benefits based on a psychological limitation was arbitrary and capricious. On February 8, 2002, Dr. Sherman could not find "clinically significant" evidence of depression or anxiety that would account for plaintiff's symptoms. He concluded that plaintiff was having difficulty adjusting to changes in his life, and psychotherapy would be beneficial. However, he did not opine that plaintiff was disabled or could not perform his job. Dr. Sherman subsequently revised his opinion of plaintiff's condition in a letter to plaintiff's counsel. He stated that he believed plaintiff's symptoms were genuine, and depression and anxiety temporarily rendered plaintiff totally disabled. Dr. Harnish diagnosed plaintiff with "major depression," but did not make any findings about plaintiff's ability to perform his job. Admin Rec. at 390. Plaintiff states that PwC notified him he was not meeting expectations as an employee and he felt that his depressive condition affected his job performance. Plaintiff claims that Hartford ignored evidence in the administrative record proving that plaintiff had a psychological limitation that prevented him from working.

Dr. Kent reviewed all of this information and concluded that plaintiff suffered from a long-standing dysthymic disorder that varied in intensity. This finding is supported by the administrative record by a statement of plaintiff's treating psychologist. Dr. McElwain diagnosed plaintiff with dysthymia in January 2000, but plaintiff discontinued the treatment recommended by his psychiatrist. The most relevant information in Dr. Kent's report is that plaintiff could still perform

his duties as a municipal judge, even with his reported cognitive difficulties. Under the Plan, plaintiff would not qualify as disabled even if he had difficulty performing the essential tasks of his job. Plaintiff must prove that was "prevented" from completing one essential task of his job. Plaintiff has introduced medical evidence supporting his claim that had depressive symptoms that impacted his cognitive abilities, but he has not directly challenged Hartford's finding that he could perform the essential duties of his job. In a letter to Hartford, plaintiff stated his position that he wanted to return to work "if it is ultimately determined that [he is] not disabled or immediately if that is necessary to preserve [his] status as an employee." Id. at 516. He clearly stated his opinion that he was disabled, but his statement suggests that he believed he could return to work if Hartford determined that he was not disabled. In the same letter, plaintiff states that his physicians were not provided a copy of his essential job tasks before August 19, 2002. This suggests that plaintiff's treating physicians lacked a reliable foundation for concluding that plaintiff was totally disabled.

The administrative record shows that plaintiff's treating physicians diagnosed plaintiff with many different conditions in an attempt to treat his depression and anxiety. However, even his own physicians could not agree on the cause of plaintiff's problems and he voluntarily discontinued psychotherapy. Even if the Court found evidence that plaintiff had a verifiable psychological condition, plaintiff's own statement suggests he could return to work. Under the Plan, it was not arbitrary and capricious for Hartford to conclude that plaintiff was not disabled. Therefore, the Plan administrator's decision should be upheld.

16

**IT IS THEREFORE ORDERED** that defendant's decision to deny plaintiff LTD benefits and to discontinue STD benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 23rd day of October, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT